**LITTERAL LLP**
Sean L. Litteral (State Bar No. 331985)
Elvia M. Lopez (State Bar No. 331986)
1401 21st Street, Suite 5414
Sacramento, California 95811
Telephone: (916) 720-2845
E-mail: sean@litterallaw.com
          elvia@litterallaw.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN SANCHEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     vs.<br><br>GKN AEROSPACE TRANSPARENCY SYSTEMS INC., GKN AEROSPACE SERVICES LTD., and MELROSE INDUSTRIES PLC.<br><br>                    Defendants. | Case No.: 8:26-CV-01296<br><br>**CLASS ACTION COMPLAINT**<br><br>1. NEGLIGENCE<br><br>2. TRESPASS<br><br>3. PRIVATE NUISANCE<br><br>4. PUBLIC NUISANCE<br><br>5. STRICT LIABILITY FOR     ULTRAHAZARDOUS ACTIVITY<br><br>6. TRESPASS TO CHATTELS /     CONVERSION<br><br>**JURY TRIAL DEMANDED** |

- 1 -

CLASS ACTION COMPLAINT

Plaintiff Jonathan Sanchez, by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following against Defendants GKN Aerospace Transparency Systems Inc., GKN Aerospace Services LTD., and Melrose Industries PLC (herein, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF CLAIM

1. Plaintiff brings this class action lawsuit on behalf of himself and all similarly situated individuals located in and around Defendants' GKN Aerospace facility located at 12122 Western Avenue in Garden Grove (the "Facility"), seeking redress following a hazardous crisis (the "Crisis") involving a compromised chemical tank containing massive amounts of methyl methacrylate ("MMA")—a volatile and flammable liquid used to make acrylic plastics—heating up and emitting toxic fumes.

2. As a result of that Crisis—which is attributable in all respects to Defendants' negligent storage, containment, handling, and monitoring—50,000 residents were ordered to evacuate a radius near the facility due to concerns about toxic exposure, causing the Class to suffer, among other things, loss of enjoyment of property, property damage, exposure to toxic material, inconvenience, disruption and economic damages as alleged more specifically below.

3. Accordingly, Plaintiff brings claims against Defendants individually and on behalf of all similarly situated individuals for: (1) Negligence; (2) Trespass; (3) Private Nuisance; (4) Public Nuisance; (5) Strict Liability for Ultrahazardous Activity; and (6) Trespass to Chattels / Conversion.

///

///

///

- 2 -

CLASS ACTION COMPLAINT

**PARTIES**

4.    Jonathan Sanchez is a resident of Stanton, California and a citizen of the State of California.  He is a military veteran, husband, and father of two children, including a newborn who was born just days before the Crisis.

5.    As a result of Defendants' negligent, careless, and/or intentional conduct in connection with the Crisis, Mr. Sanchez was ordered to evacuate and has suffered damages, including, but not limited to, loss of enjoyment of property, evacuation-related expenses, and contamination of his property and place of enjoyment by toxic chemicals and their byproducts dispersed by Defendants.

6.    Defendant GKN Aerospace Transparency Systems Inc. is a California Corporation with its principal place of business at 12122 Western Avenue, Garden Grove, California 92841.  Defendant GKN Aerospace Transparency Systems Inc. describes that it "serve[s] over 90% of the world's aircraft and engineer manufacturers" and states that it hopes "to be the most trusted and sustainable partner in the sky."

7.    Defendant GKN Aerospace Services LTD., is a United Kingdom Private Limited Company, with its principal place of business at 1301 Solana Boulevard, Suite 1528, Westlake, Texas 76262.

8.    Defendant Melrose Industries PLC, is a United Kingdom Public Company, with its principal place of business at 1301 Solana Boulevard, Suite 1528, Westlake, Texas 76262.

9.    At all times, Defendants exercised and/or enforced centralized oversight, management, direction, and control over hazardous materials policies, operational safety protocols, environmental compliance procedures, risk management practices, industrial safety systems, and corporate government affecting the operation of Defendant GKN Aerospace Transparency Systems Inc., including the handling,

- 3 -

CLASS ACTION COMPLAINT

storage, containment, monitoring, maintenance, and management of MMA and other hazardous chemicals located at the Facility.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

11.    This Court has personal jurisdiction over Defendants because Defendants transact and do business within this judicial district and has committed the acts complained of below within this judicial district.  As a result, Defendants are subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District.

## FACTUAL ALLEGATIONS

13.    At 3:30 p.m. on Thursday, May 21, 2026, first responders arrived at the GKN Aerospace Transparency Systems Inc. facility located at 12122 Western Avenue based on reports of a toxic chemical leak.

14.    It was later determined that a 34,000-gallon tank at the facility containing MMA, a volatile and flammable liquid used to make acrylic plastics that has proven harmful to humans, animals, and the environment, was in crisis.  A photo of the scene is included below.

///

///

///

///

///

- 4 -

CLASS ACTION COMPLAINT



15.    According to the U.S. Environmental Protection Agency ("EPA"), MMA is known to induce a number of acute health effects in humans, including irritation to the skin, eyes, and mucous membranes, harm to respiratory symptoms such as chest tightness, dyspnea, coughing, wheezing, and reduced peak flow, and neurological symptoms, including headaches, lethargy, lightheadedness, and sensation of heaviness in arms and legs.

16.    The EPA has also found that exposure to MMA may result in respiratory and nasal symptoms, reduced lung function, and cardiovascular disorders. Additionally, a causal relationship has been found between occupational exposure and increased incidences of colon and rectal cancers.

17.    In animals, methyl methacrylate has also been found to result in acute and chronic health effects such as degenerative olfactory changes in the nasal passages and lung damage, pulmonary edema, and liver damage as well as necrotic changes in the liver, kidney, brain, spleen, and bone marrow, decreased weight, listlessness, prostration, and ocular and nasal discharge in animals.

18.    Concerningly, MMA is also hazardous, highly flammable, and readily vaporizes at room temperatures, producing highly concentrated airborne vapors that are heavier than air and capable of settling, pooling, and migrating into low-lying

- 5 -

CLASS ACTION COMPLAINT

areas, structures, residences, and surrounding communities, accumulating and traveling well beyond the area of release, creating widespread and foreseeable dangers.

19.   Moreover, MMA is highly lipid-soluble, allowing it to readily penetrate human skin, passing through surgical gloves and standard protective clothing, exposing individuals to harms without their knowledge.

20.   In light of these findings, MMA requires strict storage, containment, monitoring, handling, ventilation, emergency response planning, and safety controls to prevent releases capable of endangering nearby residents, workers, animals, and surrounding communities.

21.   Based on this information, authorities immediately issued a mandatory evacuation order of 50,000 residents in the surrounding areas on May 21, 2026 followed by a reissuance on May 22, 2026.  A map of the affected area is included below.



22.   Following those orders, shelters and other forms of accommodations averaging well over $100 per night began to fill as families packed up their belongings and left their homes.

///

- 6 -

CLASS ACTION COMPLAINT

23. Concurrently, officials worked overnight to address the Crisis. Still, Orange County Fire Authority Division Chief Craig Covey stated that "This is not precautionary . . . this thing is gonna fail, and we don't know when" and warned that the storage tank could potentially rupture or explode, resulting in widespread fire.

24. On May 23, 2026, California Governor, Gavin Newsom, issued a Proclamation of a State of Emergency, determining that the conditions could lead to a "magnitude and impact . . . likely to be beyond the control of the services, personnel, equipment, and facilities of any single local government and require the combined forces of a mutual aid region or regions to appropriately respond."

25. As of this complaint, crews are still working to manage the Crisis. But families, like that of Plaintiff's, remain away from home, impacted by their inability to return. As a direct and proximate result of Defendants' conduct and the Crisis, Plaintiff, and members of the proposed Class have suffered substantial interference with the use, occupancy, comfort, enjoyment, and possession of their homes and properties. Plaintiff and the Class members were displaced from their residences, forced to incur evacuation-related expenses, deprived of the safe use of their homes, and subjected to fear, anxiety, annoyance, inconvenience, and distress arising from the threat of toxic exposure and catastrophic storage failure.

## **CLASS ALLEGATIONS**

26. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained through discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following proposed class (collectively, the "Class"):

> **Evacuee Class**: All individuals who occupied, rented, or owned real property or other accommodations within the

CLASS ACTION COMPLAINT

containment area, as defined by the Orange County Fire Authority on May 22, 2026.

27.    Excluded from the Class are the following individuals: (1) officers and directors of Defendants and their parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; (2) all judges assigned to hear any aspect of this litigation, as well as their immediate family members; and (3) any insurers or insurance syndicates whose claims for damages regarding the Crisis arise out of a right of subrogation, whether equitable, contractual or otherwise; and (4) any individual who has filed a claim of physical manifestation of personal or bodily injury.

28.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

29.    Plaintiff further reserves the right to amend the above Class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower Class if appropriate.

30.    **Numerosity and Ascertainability**.  The members of the Class are so numerous that their individual joiner is impracticable.  Plaintiff is informed and believes that the proposed Class contains at least thousands of evacuees who are ascertainable by comparing the evacuation order with evacuee records.  Class members may be notified of the pendency of this action by mail and/or electronic mail or other appropriate digital means, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

31.    **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class because, among other things, Plaintiff sustained similar injuries to that of the members of the Class as a result of Defendants' uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendants.

- 8 -

CLASS ACTION COMPLAINT

32. **Commonality**.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including the following:

a. Whether Defendants' acts or omissions as set forth herein caused or contributed to the Crisis and resulting evacuation orders;

b. Whether Defendants breached their duty of reasonable care with respect to the storage of MMA;

c. Whether Defendants are strictly liable for injuries and damages suffered by Plaintiff and the Class because Defendant engaged in abnormally dangerous or ultrahazardous activity;

d. Whether Defendants violated California nuisance laws by emitting air contaminants and/or endangering the health, safety, or welfare of the public, causing unreasonable injury or damage to property;

e. Whether Defendants created a private nuisance through their acts and omissions, including by creating crisis conditions indicating the release of the toxic contaminants;

f. Whether Defendants created a public nuisance through their acts and omissions, including by creating crisis conditions indicating the release of toxic contaminants;

g. Whether Defendants committed trespass on the property of Plaintiff and the Class by their acts and omissions, including by causing hazardous materials to enter and contaminate said property;

h. Whether Defendants committed trespass to the chattels of Plaintiff and the Class through their acts and omissions, including by impairing the property as to its condition, quality, or value; depriving Plaintiff of the possession and use of their chattels for a substantial time; or causing harm to the property;

- 9 -
CLASS ACTION COMPLAINT

i. Whether Defendants' acts and omissions in the course of the Crisis caused or contributed to the losses and damages sustained by Plaintiff and the Class;

j. Whether Defendants' conduct constitutes gross negligence or willful and wanton conduct, including related to the Crisis and subsequent remediation efforts;

k. Whether medical monitoring is an appropriate remedy that should be imposed to provide early detection of future injuries and other benefits to Plaintiff and the Class;

l. Whether monitoring the diminution in value of Plaintiff's and Class members' property is an appropriate remedy; and

m. Whether Plaintiff and the Class are entitled to relief for the damages caused by Defendants.

33. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex class action litigation and mass tort litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

34. **Predominance and Superiority of Class Action**. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other methods for the quick and efficient adjudication of this controversy, for at least the following reasons:

a. Absent a class action, members of the Class as a practical matter will be unable to obtain adequate redress;

b. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

CLASS ACTION COMPLAINT

c. When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

d. A class action will permit an orderly and expeditious administration of each Class Member's claims and foster economies of time, effort, and expense;

e. A class action regarding the issues in this case present far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation.

35. **Medical Monitoring Injunctive Relief**. In addition, Plaintiff satisfies the requirement for maintaining a class action under Rule 23(b)(2). Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the Class that require court imposition of uniform relief, thereby making appropriate equitable relief to the Class as a whole within the meaning of Rule 23(b)(2).

36. As set forth above, Plaintiff is not asserting damage claims for the physical manifestation of a current toxicity injury, and has no adequate remedy at law, rendering declaratory, injunctive, and other equitable relief appropriate.

37. Plaintiff seeks equitable relief in the form of a medical monitoring program and establishment of a medical monitoring fund, and further requests injunctive relief compelling Defendants to finance the medical monitoring program and address issues as they develop during program administration.

38. As a direct and proximate result of Defendants' wrongful conduct as set forth above, Plaintiff and the Class Members have actually been exposed and will continue to be exposed, to toxic substances, fumes and/or byproducts and will continue to suffer a significantly increased risk of serious injury as alleged herein. This increased risk is such that a reasonable physician would order medical

- 11 -

CLASS ACTION COMPLAINT

monitoring, including but not limited to periodic medical testing and necessary examinations.

39.    Early detection and treatment of cancer and many other diseases is associated with more favorable outcomes.  Timely-instituted medical monitoring will reduce the risk of illness and or more severe illness by using medical tests to detect who has been affected by exposure to MMA and other toxic substances and/or byproducts released by the Crisis, and to provide medical intervention that will prevent or reduce the deterioration of long-term health and well-being of Plaintiff and the Class he seeks to represent.  Medical monitoring and testing procedures, including clinical examinations, exist that make the early detection of exposure to those toxic substances, toxic fumes and potential carcinogens that were released into the Class area as a result of the Crisis, as well as early detection of disease, both feasible and beneficial.

40.    This increased susceptibility to injuries and irreparable threat to the health of the Plaintiff and the Class Members resulting from their exposure to MMA and other toxic substances and/or their byproducts can be appropriately mitigated and addressed only be the creation of a comprehensive medical monitoring program, supervised by the Court, and funded by the Defendants, that: (a) notifies individuals who have been exposed to MMA and other toxic substances and/or their byproducts of the potential harm from such exposure and the need for periodic testing and examination; (b) provides early detection and treatment of disease and injuries caused by exposure to MMA and other toxic substances and/or their byproducts; and (c) gathers and forwards to treating physicians information related to the diagnosis and treatment of injuries and diseases which may result from exposure to MMA and other toxic substances and/or their byproducts.

41.    Establishment of a Court-supervised medical monitoring program can readily assure that the proceeds of any monitoring trust fund are reserved for the

CLASS ACTION COMPLAINT

provision of and/or reimbursement for the above-referenced examination and testing procedures and related activities, guaranteeing the purely equitable use of any trust fund proceeds. The Court's use of its injunctive powers to oversee and direct medical monitoring in this case is an appropriate and necessary method of adjudication.

42. The precise nature, form, extent and duration of Court-ordered diagnostic monitoring, clinical examinations, research activities, and education programs are a matter for the Court to decide, after hearing and consulting with medical, industrial, modeling, and other experts. Class adjudication of the right to this relief is both appropriate and necessary.

43. The medical monitoring program should (a) be generally supervised by the Court and may be directly managed by Court-appointed, Court-supervised special masters or trustees; (b) involve the monitoring of all Class Members by designated physicians under a Court-approved medical treatment and research regiment; and (c) involve the collection of medical data utilized for group studies, as well as monitoring and treatment of individuals. During program administration, Defendants should address issues implicated by program administration as they develop.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: NEGLIGENCE

### (*On Behalf of Plaintiff and the Class*)

44. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

45. Plaintiff brings this claim individually and on behalf of the proposed Class.

46. Defendants owed Plaintiff and members of the proposed Class a duty to exercise reasonable care in the ownership, operation, maintenance, storage, containment, monitoring, supervision, inspection, handling, and control of MMA and other hazardous chemicals maintained at the Facility.

- 13 -

CLASS ACTION COMPLAINT

47.    Defendants further owed a duty to design, implement, maintain, and enforce adequate safety procedures, emergency response protocols, inspection systems, containment measures, warning systems, ventilation systems, cooling systems, and operational safeguards sufficient to prevent the release, overheating, ignition, migration, or uncontrolled discharge of hazardous chemical substances into neighboring communities.

48.    Defendants knew or reasonably should have known that MMA is extremely volatile, flammable, reactive, and toxic chemical substance capable of causing catastrophic harm if improperly stored, maintained, monitored, or contained.

49.    Defendants further knew or reasonably should have known that any release, overheating event, containment failure, or uncontrolled chemical reaction involving MMA could foreseeably result in airborne toxic vapor migration, fire, explosion, environmental contamination, mandatory evacuations, respiratory exposure, and widespread harm to nearby residents and properties.  Despite such knowledge, Defendants failed to exercise reasonable care in the management and control of the hazardous substances maintained at the Facility.

50.    Defendants breached their duties of care by, among other things, negligently storing MMA in dangerous conditions; failing to properly inspect and maintain storage systems and equipment, failing to implement adequate temperature monitoring, pressure monitoring, cooling, containment, and emergency mitigation systems; failing to properly supervise hazardous chemical operations; failing to adequately train personnel responsible for the handling and maintenance of MMA; failing to implement proper emergency procedures; failing to timely warn surrounding residents and governmental agencies of dangerous conditions; and otherwise failing to prevent the hazardous conditions and chemical emergency described herein.

- 14 -

CLASS ACTION COMPLAINT

51.    Defendants further breached their duties by maintaining substantial quantities of hazardous industrial chemicals in close proximity to densely populated residential communities without adequate safeguards sufficient to protect neighboring residents and properties from foreseeable chemical releases, toxic vapor migration, evacuation conditions, and catastrophic industrial failures.  Defendants prioritized operational convenience, production concerns, cost savings, and/or profit over the implementation of adequate industrial safety measures necessary to protect the public.

52.    As a direct and proximate result of Defendants' negligent acts and omissions, crisis circumstances were created, including those indicating the release of MMA and hazardous chemical vapors and/or their byproducts into the surrounding environment, creating dangerous emergency conditions that caused governmental evacuation orders, shelter-in-place directives, road closures, public safety warnings, and substantial interference with the use and enjoyment of nearby homes and properties.

53.    Plaintiff and members of the proposed Class were forced to evacuate, refrain from occupying their residences, alter their daily activities, incur displacement-related expenses, and endure fear, anxiety, inconvenience, annoyance, contamination concerns, and other damages arising from the hazardous conditions created by Defendants.

54.    The injuries and damages suffered by Plaintiff and the proposed Class were foreseeable consequences of Defendants' negligent conduct.  Defendants knew or reasonably should have known that the negligent storage, handling, maintenance, containment, and supervision of MMA created an unreasonable risk of catastrophic chemical failure and substantial harm to neighboring communities.  Nevertheless, Defendants failed to take reasonable precautions necessary to prevent the MMA

CLASS ACTION COMPLAINT

emergency and resulting injuries and damage suffered by Plaintiff and the proposed Class.

## SECOND CAUSE OF ACTION: TRESPASS

### (*On Behalf of Plaintiff and the Class*)

55.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

56.   Plaintiff brings this claim individually and on behalf of the proposed Class.

57.   Plaintiff and the Class are owners, occupants, and/or tenants of real property.

58.   Defendants caused the Crisis occurring near the real properties of Plaintiff and the Class, which in turn caused the MMA and hazardous chemical vapors and/or their byproducts to travel to the properties of Plaintiff and the Class.

59.   Plaintiff and the Class did not give Defendants permission to cause MMA and hazardous chemical vapors and/or their byproducts to enter their properties.

60.   As a result of Defendants' conduct, Plaintiff and the Class have suffered damages.

61.   Defendants acted with a conscious disregard of the rights of others and put their own financial interests ahead of the interests of Plaintiff and the Class, which constitutes malice.

62.   Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes oppression.

63.   Thus, Defendants acted with oppression and/or malice and Plaintiff and the Class are, therefore, entitled to punitive damages in an amount according to proof at trial.

- 16 -

CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION: PRIVATE NUISANCE

### (On Behalf of Plaintiff and the Class)

64.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

65.    Plaintiff brings this claim individually and on behalf of the proposed Class.

66.    Plaintiff and the Class are owners, occupants, and/or tenants of real property.

67.    In creating crisis circumstances, including those indicating the release of MMA and hazardous chemical vapors and/or their byproducts into the surrounding environment near properties where Plaintiff and the Class owned, occupied, and/or resided in, Defendants created a condition that is an obstruction to the free use of the properties, so as to interfere with the comfortable enjoyment of the properties.

68.    The Crisis interfered with the use and enjoyment of the properties by Plaintiff and the Class.

69.    Plaintiff and the Class did not consent to Defendants' conduct.

70.    The seriousness of the harm outweighs the public benefit of Defendants' conduct.

71.    As a result of Defendants' conduct, Plaintiff and Class members have suffered damages.

72.    Defendants acted with a conscious disregard of the rights of others and put their own financial interests ahead of the interests of Plaintiff and the Class, which constitutes malice.

73.    Defendants acted with a despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes oppression.

///

- 17 -

CLASS ACTION COMPLAINT

74. Thus, Defendants acted with oppression and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION: PUBLIC NUISANCE**

(*On Behalf of Plaintiff and the Class*)

75. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

76. Plaintiff brings this claim individually and on behalf of the proposed Class.

77. At all relevant times, Defendants owned, operated, controlled, maintained, supervised, managed, and/or were otherwise responsible for the Facility, including the storage, handling, containment, maintenance, monitoring, and control of MMA and related hazardous chemicals and/or their byproducts.

78. Defendants' acts and omissions, including the negligent storage, containment, maintenance, monitoring, supervision, and control of MMA, created dangerous conditions that substantially and unreasonably interfered with rights common to the general public, including public health, public safety, public peace, public comfort, public convenience, and the safe use of public and private property throughout the surrounding communities.

79. The hazardous conditions created by Defendants resulted in widespread emergency response measures, including evacuation orders, shelter-in-place directives, road closures, emergency perimeters, hazardous materials response operations, public safety warnings, and substantial disruption to residential neighborhoods and surrounding communities in Garden Grove, Stanton, Cypress, Anaheim, Buena Park, Westminster, and nearby areas.

80. Defendants' conduct created a substantial and continuing risk of fire, explosion, toxic vapor migration, environmental contamination, airborne chemical

- 18 -

CLASS ACTION COMPLAINT

exposure, and catastrophic harm affecting tens of thousands of residents, businesses, schools, roadways, public infrastructure, and properties located near the facility.

81. The interference caused by Defendants was substantial, unreasonable, offensive, and harmful to the public, and would be highly offensive to an ordinary person.

82. Plaintiff and members of the proposed Class suffered injuries and damages different in kind from those suffered by the general public because Plaintiff and the Class members resided within or near the evacuation and impact zones, were forced to evacuate or shelter in place, suffered direct interference with the use and enjoyment of their homes and properties, incurred displacement-related expenses, and experienced heightened contamination concerns, fear, annoyance, inconvenience, and property-related damages.

83. As a direct and proximate result of Defendants' conduct and the public nuisance created, Plaintiff and members of the proposed Class suffered damages, including, but not limited to, loss of use and enjoyment of property, evacuation-related damages, displacement costs, diminution in value, nuisance damages, emotional distress, annoyance, inconvenience, and other economic and non-economic harm.

84. Defendants acted with conscious disregard for the rights, safety, and well-being of Plaintiff, the Class, and the surrounding public, thereby entitling Plaintiff and the Class to punitive damages according to proof at trial.

## FIFTH CAUSE OF ACTION: STRICT LIABILITY
## FOR ULTRAHAZARDOUS ACTIVITY
### *(On Behalf of Plaintiff and the Class)*

85. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

///

- 19 -

CLASS ACTION COMPLAINT

86.    Plaintiff brings this claim individually and on behalf of the proposed Class.

87.    Defendants' storage, handling, containment, maintenance, processing, monitoring, and control of large quantities of MMA and related hazardous industrial chemicals and/or byproducts constituted ultrahazardous and/or abnormally dangerous activities.  MMA is an inherently volatile, flammable, reactive, and toxic chemical substance that presents a substantial risk of catastrophic harm to persons, property, animals, and the environment when released, overheated, improperly contained, or otherwise uncontrolled.  The dangers associated with MMA include fire, explosion, toxic vapor migration, airborne contamination, respiratory injury, chemical exposure, environmental contamination, and mass evacuation events affecting surrounding communities.

88.    The risks associated with the storage and management of MMA are extraordinary and extend far beyond those ordinarily associated with routine industrial operations.  Because MMA vapors readily aerosolize, migrate through the air, and accumulate in populated and low-lying areas, any loss of containment creates a substantial and foreseeable danger to neighboring residences, occupants, businesses, schools, and the public at large.  Moreover, MMA's highly flammable and reactive nature creates a continuing risk of catastrophic ignition, combustion, explosion, and uncontrolled toxic release capable of causing widespread property damage, physical injury, contamination, displacement, and environmental harm.

89.    The ultrahazardous nature of Defendants' activities is further demonstrated by the fact that the risks posed by large-scale MMA storage and handling cannot be entirely eliminated through the exercise of reasonable care.  Even where precautions are undertaken, the storage of substantial quantities of volatile industrial chemicals in close proximity to residential communities necessarily creates a high degree of risk of serious harm in the event of equipment failure, overheating,

- 20 -

CLASS ACTION COMPLAINT

containment failure, human error, chemical instability, mechanical malfunction, fire, or other operational failure.  The magnitude of potential harm associated with MMA release—including toxic airborne plume migration, mandatory evacuations, exposure to hazardous vapors, and the threat of catastrophic explosion—renders such activities abnormally dangerous as a matter of law.

90.    At all relevant times, Defendants engaged in, authorized, controlled, supervised, and/or benefited from such ultrahazardous activities at the Facility. Defendants knew or should have known that the storage and handling of MMA in substantial quantities created a foreseeable and unreasonable risk of catastrophic harm to nearby residents and properties, particularly given the facility's proximity to densely populated residential communities.

91.    As a direct and proximate result of Defendants' ultrahazardous activities, Defendants created crisis circumstances, including those indicating the release of MMA and hazardous chemical vapors and/or their byproducts into the surrounding environment, resulting in emergency conditions such as evacuation orders, shelter-in-place directives, widespread fear of toxic exposure, interference with the use and enjoyment of residential properties, contamination concerns, and other damages suffered by Plaintiff and members of the proposed Class.

92.    Because Defendants engaged in ultrahazardous and abnormally dangerous activities, Defendants are strictly liable for all injuries, damages, losses, interference with property rights, evacuation-related harm, nuisance conditions, contamination-related damages, diminution in value, emotional distress, and other injuries proximately resulting from the MMA release and related hazardous conditions, regardless of the degree of care exercised by Defendants.

///

///

///

- 21 -

CLASS ACTION COMPLAINT

## SIXTH CAUSE OF ACTION: TRESPASS
## TO CHATTELS (CONVERSION)
### *(On Behalf of Plaintiff and the Class)*

93.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

94.    Plaintiff brings this claim individually and on behalf of the proposed Class.

95.    Defendants' improper storage of MMA, as described herein, near Plaintiff's and the Class' personal property has caused an intrusion upon, changes to, damage to, and destruction or the perception of such alterations of Plaintiff's and the Class' property interest therein, and has deprived Plaintiff and the Class of the possession, control, and use of their property interests.

96.    Such dominion and control by Defendants have and continues to wrongfully interfere with Plaintiff's and the Class' right of ownership of the personal property as to constitute conversion of Plaintiff's and the Class' property interest in their personal property.

97.    As a direct and proximate result of Defendant's exercise of dominion and control over Plaintiff's and the Class' personal property, Plaintiff and the Class have suffered all of the injuries and damages described herein.  Defendants are liable for all such damage and punitive damages as set forth herein.

98.    The aforementioned acts of the Defendants were willful, wanton, malicious, and oppressive, and taken with intent to interfere with or in reckless disregard to Plaintiff's and the Class' property rights, and justify an award of exemplary and punitive damages.

///

///

///

- 22 -

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter a judgment in his favor and against Defendants, as follows:

a. Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff as Class Representative and his attorneys as Class Counsel;

b. For damages, including compensatory, punitive, and exemplary damages, in an amount to determined just and reasonable;

c. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

d. For prejudgment and post-judgment interest on all amounts awarded;

e. For injunctive and declaratory relief, as allowed by law, including medical monitoring; and

f. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of any and all issues in this action so triable.

Dated: May 26, 2026                    Respectfully submitted,

**LITTERAL LLP**

By: ___/s/ Sean L. Litteral___
　　　　Sean L. Litteral

Sean L. Litteral (State Bar No. 331985)
Elvia M. Lopez (State Bar No. 331986)
1401 21st Street, Suite 5414
Sacramento, California 95811
Telephone: (916) 720-2845
Email: sean@litterallaw.com
　　　　elvia@litterallaw.com

*Attorneys for Plaintiff and the Proposed Class*

- 23 -

CLASS ACTION COMPLAINT